**SO ORDERED.**

**SIGNED this 6 day of June, 2013.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### GREENVILLE DIVISION

IN RE:

L.L. MURPHREY COMPANY,   CASE NO. 12–03837–8–JRL
   CHAPTER 7
   DEBTOR.

_____

### ORDER

This matter came before the court on the notice of proposed public sale and the motion to sell assets free and clear of liens and transfer liens to proceeds of sale ("motion to sell free and clear of liens") filed by Walter L. Hinson ("trustee"), both of which are opposed by D.A.N. Joint Venture Properties of North Carolina, LLC ("DAN Joint Venture Properties"), successor–in–interest to D.A.N. Joint Venture III, L.P. ("DAN Joint Venture III") (collectively "DAN"). A hearing was held on May 23, 2013, in Raleigh, North Carolina. At the conclusion of the hearing, the court took the matter under advisement.[1]

---

[1] The court directed the trustee to submit, as an exhibit in support of the notice of proposed sale and motion to sell free and clear of liens, a draft of the complaint he intends to file initiating an adversary proceeding against DAN seeking avoidance of liens allegedly held on real and personal property belonging to L.L. Murphrey Company ("debtor").

1

The debtor, an enterprise operating swine production and finishing facilities in Greene County, North Carolina, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 21, 2012.

## BACKGROUND

The debtor previously filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 8, 2000, and at the time of that filing, the debtor was in default to Wachovia Bank, N.A. ("Wachovia") in the amount of $12,790,522.36 pursuant to five separate promissory notes executed between July 1993 and March 1999 (collectively "promissory notes").[2] The repayment and performance of the obligations under the first four promissory notes were secured by a deed of trust, assignment of rents, security agreement and financing statement ("April 1996 security instruments") executed on April 23, 1996 in favor of Wachovia and recorded in Book 489 at Page 620 of the Greene County Register of Deeds and in Book 1049 at Page 243 of the Lenoir County Register of Deeds. The remaining promissory note, dated March 16, 1999, was secured by a deed of trust, assignment of rents, security agreement and financing statement ("March 1999 security instruments") executed in favor of Wachovia and recorded in Book 513 at Page 178 of the Greene

---

[2]These five promissory notes executed in favor of Wachovia by the debtor can be summarized as follows:

| Execution Date | Description | Original Principal Amount |
|---|---|---|
| July 9, 1993 | Promissory Note | $1,131,478.94 |
| April 23, 1996 | Promissory Note | $3,500,000.00 |
| April 23, 1996 | Declining Revolver Promissory Note | $5,420,000.00 |
| April 23, 1996 | Grain Line–of–Credit Promissory Note | $2,750,000.00 |
| March 16, 1999 | Future Advance Promissory Note | $175,000.00 |

County Register of Deeds and in Book 1141 at Page 323 of the Lenoir County Register of Deeds. As additional security, Wachovia received security interests in the debtor's fixtures and personal property, which it perfected by filing financing statements with the North Carolina Secretary of State and fixture filings with the Greene County Register of Deeds and Lenoir County Register of Deeds.

In the debtor's previous chapter 11 case, this court entered an order on July 13, 2001, confirming the debtor's fourth amended plan of reorganization. Class III of the confirmed plan, dealing with the treatment of Wachovia's claims, divided the five previously–executed promissory notes and any modifications thereto into two promissory notes: Note A and Note B. Note A was amortized over a ten–year period in the amount of $8,000,000.00 with interest accruing at a rate of 9% per annum and called for monthly payments of $70,500.00. Note B was a cash flow note in the amount of $3,500,000.00, less any payments from certain swine sales netting more than $3,000,000.00, and provided for an excess cash flow based payment. Both Note A and Note B remained secured by the collateral pledged to Wachovia by the debtor and guaranteed by two guaranty agreements executed by the debtor's principals, Larry Barlow, Lois Barlow and Doris Murphrey prepetition. The confirmed plan further provides the following:

> **R.** **Execution and Delivery of Revised Loan Documents**
>
> The Debtor and Wachovia will enter into amended and restated Loan Documents (the "Wachovia Restated Loan Documents") consistent with the provisions of this Plan of Reorganization. The Debtor shall execute and deliver such agreements, instruments and documents as may be reasonably requested by Wachovia. The Wachovia Restated Loan Documents shall contain reasonably and customary warranties, covenants and other terms as the Debtor and Wachovia may agree upon. The following shall constitute events of default:
>
> (i)     Nonpayment as required under [the] terms of Note A or Note B,
>
> (ii)    Material misrepresentation,

3

    (iii)    Material breach of warranties or covenants,

    (iv)    Subsequent voluntary or involuntary bankruptcy proceedings, or

    (v)    Reopening of current bankruptcy proceedings.

**S.**    **Implementation Date**

The Implementation Date for Note A and Note B shall be October 1, 2001, provided that the following Conditions Precedent have been met:

    (i)    Cash shall be available to the Debtor in an amount sufficient to permit payment in full of all Administrative Claims,

    (ii)    Eleven days shall have expired since the Confirmation Date and no stay of the Confirmation Order shall be in effect, and

    (iii)    The Wachovia and MLLC Restated Loan Documents [referred to above as the "Wachovia Restated Loan Documents"] required by the Plan of Reorganization shall have been executed and delivered.

(emphasis in original).[3] The plan further provides that "[a]ll liens remaining in favor of any creditor in this action against the real property conveyed prior to the filing of the petition shall be deemed . . . released upon confirmation of the Plan."

Post–confirmation, Wachovia's claim and any liens it held under the April 1996 security instruments and March 1999 security instruments was acquired by CadleRock Joint Venture, L.P. on December 23, 2003, which was then subsequently assigned to DAN on August 11, 2008. Thereafter, DAN filed the requisite notices of assignment, amendments and continuation statements with the Greene County Register of Deeds, Lenoir County Register of Deeds and North Carolina

---

[3]These referenced sections of the confirmed plan are erroneously labeled as sections R and S. This court's order confirming the fourth amended plan further amends the treatment of Wachovia's claims by requiring the debtor, on the effective date or as soon as practicable thereafter, to distribute to Wachovia approximately one–half of the total proceeds received from liquidation of its herd ($1,828,737.00) less the 10% to be retained.

Secretary of State. After the debtor's chapter 7 filing, DAN filed a proof of claim, Claim No. 4, in the amount of $6,056,645.26 on August 16, 2012, $3,500,000.00 of which it asserted was secured based on the value of the tracts of real property and personal property serving as security and perfected by a "mortgage, security agreement and UCC–1.". The balance of its proof of claim, $2,556,645.26, was to be treated as a general unsecured claim. Attached to its proof of claim was a copy of the debtor's fourth amended plan of reorganization, copies of the April 1996 security instruments, March 1999 security instruments, copies of the assignments it filed with the Greene County Register of Deeds and Lenoir County Register of Deed and its filings with the North Carolina Secretary of State.

On January 23, 2013 and February 13, 2013, the trustee filed the motions currently before the court requesting approval to conduct a proposed public sale of the debtor's real and personal property free and clear of liens, with any such liens transferred to the proceeds of the sale. The real property that is the subject of the public sale proposed by the trustee include the following six tracts:

| Tract | Description |
|---|---|
| Holloman Farm | Two separate parcels containing 97.6 acres, more or less, located in Greene County, North Carolina. |
| Radford Farm, Jones Farm & Pork Co. | 135.74 acres, more or less, located in Greene County, North Carolina. |
| Snow Hill Grain Facility | 5.36 acres, more or less, located in Greene County North Carolina. |
| Edge Brothers Property | 2.57 acres, more or less, located in Greene County North Carolina. |
| Hinson Farm | 23.46 acres, more or less, located in Greene County, North Carolina. |
| Lenoir Grain Co. | 2.27 acres, more or less, located in Lenoir County, North Carolina. |

The personal property that the trustee proposes to sell at the public sale includes the following: (1) a Massey–Ferguson 240 tractor; (2) a Massey Ferguson 290 tractor with loader; (3) four trailers bearing VIN Nos. NCX430005, NCX362769, NCX640750 and NCX640712; (4) a 2009 Wing mobile home bearing VIN No. VAFLY19A54211WG12; (5) a 2003 Loadtrail trailer bearing VIN No. 4ZESH202331165937; (6) a 1989 Hudson trailer bearing VIN No. 10HHTD1D3K1000404; (7) a 1996 Hudson trailer bearing VIN No. 10HHSE165T1001288; (8) a John Deere 10' drag; (9) two Bobcat welders; (10) pressure washers, generators, bolt bins and shop equipment; (11) service parts including, but not limited to, filters, hoses and belts; (12) store inventory including miscellaneous pipe fittings, rain suits and boots; (13) metal warehouse and shop buildings; (14) office and store fixtures, equipment, supplies and inventory; and (15) any other property, of any nature and at any location, that the trustee determines is property of the estate (collectively "personal property").

With the exception of the Edge Brothers Property, DAN asserts liens on each of the above–referenced tracts of real property and items of personal property. On February 8, 2013, DAN filed an objection to the trustee's motion to sell free and clear of liens, arguing that the trustee had failed to establish the existence of any of the five separate grounds under § 363(f). With respect to § 363(f)(4), DAN contends that its interest is not subject to a factual or legal dispute because there are no pending objections to its proof of claim and the debt underlying its claim and liens was explicitly reaffirmed by an order entered by this court in an associated adversary proceeding. See L.L. Murphrey Co. v. D.A.N. Joint Venture III, L.P. (In re L.L. Murphrey Co.), Adv. No. 11–00139, 2011 WL 6301214 (Bankr. E.D.N.C. Dec. 16, 2011) (calculating the recapitalized debt under Note B of the confirmed plan to be the amount stated in the plaintiffs' complaint – $6,186,362.00).

On May 28, 2013 and in accordance with the court's oral directive at the conclusion of the

hearing, the trustee submitted a draft of the complaint he anticipates filing in an adversary proceeding against DAN, as an exhibit in support of his notice of proposed public sale and motion to sell free and clear of liens. The multi–count draft complaint, naming both DAN Joint Venture Properties and DAN Joint Venture III as defendants, asserts that the April 1996 security instruments and the March 1999 security instruments, both of which form the basis of the liens alleged held by DAN on the five tracts of real property and personal property owned by the debtor, are avoidable pursuant to § 544(a)(3). In his first, third, sixth and seventh claims for relief, the trustee contends that sets of security instruments (including any liens and security interests arising therefrom) are invalid because they were released upon confirmation of the fourth amended plan of reorganization in the debtor's previous chapter 11 case. Alternatively, the second and fourth claims for relief in the complaint allege that both sets of security instruments fail to accurately describe the underlying obligations created in Class III of the previously confirmed fourth amended plan of reorganization.

DAN filed an amended and supplemental objection to the trustee's notice of proposed public sale and motion to sell free and clear of liens on May 28, 2013. Its supplemental objection asserts that the confirmed plan only required the execution of new deeds of trust that were "reasonably requested" by Wachovia and, therefore, any argument that DAN's liens were released upon confirmation is without merit and may not be utilized by the trustee to manufacture a "bona fide dispute."[4]

---

[4] The court's decision resolving the trustee's notice of proposed public sale and motion to sell free and clear of liens was completed and submitted for filing prior to receipt of the response to the amended and supplemental objection of DAN filed by Larry Barrow, Lois Barrow, Doris Murphrey, Sideline Farms, LLC, L.L. Murphrey Equipment Company (collectively "Murphrey") on June 5, 2013. Therefore, the arguments raised in Murphrey's response will not be addressed nor considered by the court in resolving this matter. The submitted opinion was retrieved from the clerk of court only to add this footnote.

## DISCUSSION

Section 363(b) of the Bankruptcy Code[5] permits a trustee, after notice and a hearing, to use, sell or lease property of the estate outside the ordinary course of the debtor's business. 11 U.S.C. § 363(b). Section 363(f)(4) provides that "[t]he trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if . . . such interest is in bona fide dispute . . . ." 11 U.S.C. § 363(f)(4); In re N.J. Affordable Homes Corp., No. 05–60442, 2006 WL 2128624, at *10 (Bankr. D.N.J. June 29, 2006) (stating that "the purpose behind § 363(f)(4) 'is to allow the sale of property of the estate free and clear of disputed interests so the liquidation of assets is not unnecessarily delayed while the disputes are being litigated.'" (citations omitted)). The phrase "bona fide dispute" is not defined by the Bankruptcy Code, Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp., 986 F.2d 709, 715 (4th Cir. 1993) ("Although courts have not agreed on a precise definition of 'bona fide dispute,' it entails some sort of meritorious, existing conflict." (citations omitted)); however, courts have found the existence of a "bona fide dispute" for purposes of § 363(f)(4) when "there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." In re Taylor, 198 B.R. 142, 147 (Bankr. D.S.C. 1996) ("This standard does not require that the Court resolve the underlying dispute or determine the probable outcome of the dispute, but merely whether one exists."); see, e.g., In re Merit Grp., Inc., 464 B.R. 240, 252–53 (Bankr. D.S.C. 2011); In re Octagon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991) (emphasizing that a "bona fide dispute" requires "some factual grounds to show that there is 'an

---

[5]Hereinafter and unless otherwise indicated, all sections referenced are to the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

objective basis' for the dispute [as to the validity of the debt]."). To qualify as a "bona fide dispute" under § 363(f)(4), "the propriety of the lien does not necessarily have to be the subject of an immediate or concurrent adversary proceeding." In re Collins, 180 B.R. 447, 452 n.8 (Bankr. E.D. Va. 1995); accord Union Planters Bank, N.A. v. Burns ( In re Gaylord Grain LLC), 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004).

Based on the record and a thorough review of the post–hearing materials filed by the trustee and DAN, the court finds that the trustee has established the existence of a "bona fide dispute" regarding the validity of DAN's liens, which arise from the April 1996 security instruments and the March 1999 security instruments, on the five tracts of real property and associated personal property which are subject to the proposed public sale. The language of the confirmed plan of reorganization is unambiguous and imposes an obligation on the parties, the debtor and Wachovia, to execute amended and restated agreements, instruments and other loan documents consistent with the treatment provided therein. In addition to being explicitly required, the execution and delivery of the amended and restated loan documents was a condition precedent for setting the implementation date for Note A and Note B as October 1, 2001. Despite DAN's argument to the contrary, these provisions appear mandatory and not self–executing. In the absence of these amended and restated loan documents, the description of Note A and Note B as well as the recitation of its terms, obligations and the treatment provided to Wachovia are insufficient to constitute negotiable instruments.[6] The trustee has demonstrated that there is an objective basis for his assertion that the

---

[6]The insufficiency of the description of the terms and conditions of Note A and Note B in Class III of the confirmed plan is further supported by the requirement that the parties enter into amended and restated loan documents. To be classified as a negotiable instrument under Article 3 of the Uniform Commercial Code, the writing or promissory note must satisfy the following criteria:

9

failure to execute and deliver these amended and restated loan documents, permits avoidance of the liens asserted by DAN under the April 1996 and March 1999 security instruments pursuant to § 544(a)(3). In accordance with § 363(f)(4), the trustee is allowed to sell the real property and items of personal property free and clear of the liens asserted by DAN.

Citing § 363(k), the trustee asserts that the dispute regarding the extent and validity of DAN's liens supplies the requisite cause to deprive DAN of the ability to credit bid at the proposed public sale.

Section 363(k), provides as follows:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court *for cause* orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. 363(k) (emphasis added). The language of 363(k) allows a court, in its discretion, to abrogate a creditor's right to credit bid "for cause." In re Olde Prairie Block Owner, LLC, 464 B.R. 337, 347 (Bankr. N.D. Ill. 2011). Credit bidding "allows the secured creditor to bid for its collateral using the debt it is owed to offset the purchase price[,]" which "ensures that, if the bidding at the sale is less than the amount of the claim the collateral secures, the secured creditor can, if it chooses, bid

---

[B]e signed by the maker or drawer, contain an unconditional promise or order to pay a sum certain in money, contain no other promise, order, obligation or power given by the maker or drawer except as authorized by G.S. Chapter 25, Article 3, be payable on demand or at a definite time, and be payable to order or to bearer.

Estate of Wilson v. Division of Social Servs., 200 N.C. App. 747, 751, 685 S.E.2d 135, 138 (2009) (quoting Gillespie v. DeWitt, 53 N.C. App. 252, 256–57, 280 S.E.2d 736, 740 (1981), cert. denied, 304 N.C. 390, 285 S.E.2d 832 (1981); see generally N.C. Gen. Stat. § 25–3–104(a) (defining "negotiable instrument" as "an unconditional promise or oder to pay a fixed amount of money, with or without interest or other charges described in the promise or order . . . .").

up the price to as high as the amount of its claim." Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC, No. 3:11–CV–00053, 2012 WL 3542527, at *7 n.14 (W.D. Va. Aug. 16, 2012) ("By using its credit to outbid a sale to a third party at a lower price, the secured creditor can choose to take possession of its collateral rather than be left under–compensated by the proceeds from a sale to another.").

"Cause" sufficient to deny or condition a secured creditor's ability to credit bid under § 363(k) is determined on a case–by–case basis. Merit Group, 464 B.R. at 252. Generally, "courts have found 'cause' to deny the opportunity to credit bid when a sufficient dispute exists regarding the validity of the lien forming the basis for the credit bid." Id. (citations omitted); Olde Prairie, 464 B.R. at 348 (stating that "[c]ourts have found cause under 363(k) to bar a secured creditor from credit bidding when the creditor's lien is in question or otherwise in dispute."); accord In re Daufuskie Island Props., LLC, 441 B.R. 60, 61 (Bankr. D.S.C. 2010) (holding that a secured creditor, whose lien and $ 34 million claim are disputed and the subject of adversary proceedings seeking avoidance and equitable subordination, was not entitled to credit bid its claim at the sale of the debtor's assets); Nat'l Bank of Commerce v. McMullan (In re McMullan), 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996) (holding that "at any such sale, [the secured creditor] shall not be entitled to offset any of its claimed liens or security interests under 11 U.S.C. § 363(k) because the validity of its liens and security interests are unresolved."), aff'd, 162 F.3d 1164 (8th Cir. 1998).

In the instant case, the court finds that cause exists to deny DAN the right to credit bid at the proposed public sale under § 363(k). The allegations advanced by the trustee and facts provided in support, together with failure of the debtor and Wachovia to abide by the explicit language of the confirmed plan requiring them to execute amended and restated loan documents in accordance with

the treatment provided thereunder, convince the court that the basis of DAN's claim and the liens asserted on the debtor's real property and items of personal property are disputed.

## CONCLUSION

Based on the foregoing, the trustee's notice of proposed public sale and motion to sell free and clear of liens are **ALLOWED**. The trustee is directed to proceed with the public sale as proposed and DAN, whose claim and liens are in dispute, will not be allowed to exercise its right to credit bid pursuant to § 363(k).

**END OF DOCUMENT**